| MICHAEL L. ECKSTEIN | * | NO. 2023-CA-0554 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| STRATUS SYSTEMS, INC. | * | |
| AND STEVEN A. BECNEL | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

CONSOLIDATED WITH:

STRATUS SYSTEMS, INC.

VERSUS

MICHAEL L. ECKSTEIN

CONSOLIDATED WITH:

NO. 2023-CA-0555

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2002-02069 C/W 2002-02253, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Rosemary Ledet)

Katherine Seegers Roth
Henry Minor Pipes, III
Patrick J. Lorio
PIPES MILES BECKMAN, L.L.C.
1100 Poydras Street, Suite 1800
New Orleans, LA 70163

      COUNSEL FOR PLAINTIFF/APPELLANT

Ashley L. Belleau
Tyler J. Arbour
Paul W. Freese
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street
Suite 2775
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED.**
**FEBRUARY 26, 2024**

RLB
TFL
RML

Appellant in this case, Michael Eckstein ("Eckstein") asks this court to reverse the trial court's ruling on his motion for contempt. The contempt issue was decided by the trial court's decision on cross-motions for summary judgment that were heard on April 14, 2023. Eckstein's motion for summary judgment was denied and the contrary motion was granted.

This case has been settled for nearly two decades, yet the parties have disputed on several occasions whether obligations undertaken as part of the settlement have been fully performed. At issue on this particular occasion is whether defendant, Stratus Systems, Inc. ("Stratus"), has met its obligation to provide drawings that would allow Eckstein to manufacture a safety device whose patent is owned by Stratus.

Stratus was formed for the purpose of designing, producing and selling a "universal inflater" whose primary purpose is to inflate life safety devices upon contact with water. Stratus was formed by Eckstein and an individual defendant, Stephen Becnel ("Becnel"). Becnel had expertise in designing and building devices and Eckstein provided capital and legal expertise. Before the project was completed, the parties' paths diverged with each accusing the other of

1

misappropriation of business assets, especially money. Lawsuits were filed by each against the other.

A settlement was reached on February 6, 2002 in which Becnel kept the company and the patent for the device.[1] Becnel retained the exclusive right to sell the inflater to military customers. Eckstein had the exclusive right and license to sell to all non-military customers.

In order to make it possible for Eckstein to benefit from the license, Stratus was obliged to provide Eckstein with "Level 3 Data/Print Package" drawings detailing all information necessary to create a working inflater unit.[2] Stratus' obligation was further defined to require it to provide to Eckstein any and all drawings and specifications that it provided to any of its machine shops and parts manufacturers. Expert witnesses were engaged by plaintiff, defendants, and the court. Each party asked its expert to review the drawings and to determine whether Stratus had met its obligations as defined by the settlement agreement, the consent judgment, and the licensing agreement.

Eckstein's expert witness, Lawrence Guera ("Guera"), testified in deposition[3] that Stratus' Universal Inflator cannot be made with the drawings provided by Stratus. The record does not reflect whether any proposed manufacturer was hampered by the drawings because Eckstein did not submit Defendants' drawings to any manufacturer with a charge to produce the inflater as drawn.

---

[1] The design and patent were completed by the time the suit was settled.

[2] The parties differed on the definition of "Level 3 Data/Print Package". The phrase is a term of art in Department of Defense procurement jargon. Experts retained by the parties were called upon to determine the meaning of the phrase in addition to other professional matters described below.

[3] Although the deposition was attached to the motion for summary judgment and is part of the record, much of this record is sealed in order to protect proprietary information that was necessarily disclosed in the course of these proceedings.

William Thomassie ("Thomassie"), the expert retained by defendants,[4] was more generous in describing the utility of the drawings. He opined that an inflater could be made using the drawings and making some educated assumptions regarding details not provided by them. In fact, Thomassie, who manages a sizeable engineering firm, assigned two of his associates to create the inflater using the drawings that were provided to Eckstein. Both of the engineers in Thomassie's firm were successful in creating a three-dimensional printed device; however, Thomassie did not compare the three-dimensional product to a working device produced by Stratus. Thomassie agreed that the drawings delivered to Eckstein did not meet the definition of a Level 3 Data/Print Package, but maintained that by making some informed assumptions, the drawings provided were adequate to build a working product.

The court appointed Roy Carubba ("Carubba") as its expert. According to the record, Carubba determined that he also required the assistance of someone with more or different expertise and called upon Moses Engineers, Inc. ("Moses") to provide an opinion. Eckstein objected to the trial court's reliance on the Moses opinion because Moses was not the court-appointed expert. Eckstein argues that the court appointed Carubba, not Moses. For its part, the trial court viewed the Moses opinion as one in the same with that of Carubba because Carubba "adopted the Moses opinion." In any event, Moses' opinion letter seems to stop short of declaring that the Stratus drawings constitute a Level 3 Data/Print Package. Moses concluded that "the drawing sets provided by Stratus Systems are in concert with

_____

[4] Guerra is a retired mechanical engineer and an inventor holding nearly 100 patents. Thomassie is a licensed professional engineer and an owner of Infinity Engineering Consultants, LLC. Neither expert claims any experience in dealing with military procurement standards.

the applicable standards and are typical to the standard documentation that would be provided by Stratus Systems in this industry."

### Standard of review.

When a "legal question arises in the context of cross-motions for summary judgment, the appropriate standard of review is *de novo*."[5] In our determination of the merits of this appeal, we are guided by the burden of proof in La. Code Civ. Proc. art. 966(A)(3), which provides that, "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

### Legal analysis.

In this instance, we are not called upon to determine the outcome of an entire claim. The parties themselves did that by way of a consent judgment long ago. Eckstein's contempt motion seeks to force Stratus and Becnel to produce drawings and data that conform to the settlement agreement. The motion, in effect, presents three questions that include both fact and law: (1) Is Eckstein entitled to a Level 3 Data/Print Package or would something else suffice?; (2) What constitutes a Level 3 Data/Print Package?; (3) If the phrase "Level 3 Data/Print Package" is interchangeable with "production ready", did Stratus provide drawings from which one could reliably make the same universal inflaters that Stratus is currently selling for military use?

After reviewing the record and the legal arguments of counsel, we conclude that there is no definitive answer to any of the questions above. The three experts

---

[5] Calcasieu Par. Sch. Bd. Sales & Use Dep't v. Nelson Indus. Steam Co., 2021-00552, p.5 (La. 10/10/21), 332 So. 3d 606, 610.

who offered opinions found three different, and sometimes opposing, ways to answer the questions. The consent judgment and the licensing agreement make clear that Eckstein is entitled to a Level 3 Data/Print Package. However, there was no agreement among the experts regarding the meaning of the military procurement terminology. Moreover, the experts retained by the parties both denied having substantial experience in military procurement jargon. By definition, expert witnesses must have "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."[6] Although Guera and Thomassie are both qualified as experts in engineering, the record does not reflect that either has the education, training or work experience to assist the court in defining the phrase "Level 3 Data/Print Package," as it is used in the military procurement process.[7] Finally, the experts had differing opinions regarding the ability of a manufacturer to create the patented device reliably from the drawings provided by Stratus. Guera firmly opined that it could not be done. Thomassie just as firmly opined that the device could be made from the drawings. In fact, a three-dimensional replica of the device was produced by Thomassie's firm. However, Thomassie did not determine whether it worked and could not say with certainty that it precisely matched the patented device.

Bound, as we are, by La. C.C.P. art. 966, we must hold that these conflicting expert opinions leave questions of fact and law that must be determined by a trial of the motion for contempt. For this reason, we reverse the trial court's judgment and remand the motion for contempt to the district court for trial on the merits.

**REVERSED AND REMANDED.**

---

[6] La. C.E. art. 702.

[7] Both engineers may, in fact, have the necessary qualifications, but the evidence in the record is not sufficient to determine that their education and experience is adequate to permit them to opine on the definition of the critical phrase as it is used in the military procurement process.